**UNITED STATES of America, Appellee,**

v.

**Christian LOPEZ, Defendant, Appellant.**

**No. 90–1671.**

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 1990.
Decided Sept. 11, 1991.

---

Joel D. Landry with whom Connors & Kilguss, Providence, R.I., was on brief, for appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before BREYER, Chief Judge, and CAMPBELL and CYR, Circuit Judges.

CYR, Circuit Judge.

On December 12, 1989, Providence, Rhode Island, police officers forcibly entered the apartment of appellant Christian Lopez pursuant to a valid search warrant. Once inside, the officers found David Mateo in one bedroom, and appellant's mother, along with appellant's daughter, in another. Appellant was seized as she was attempting to exit through the back stairway. Another individual, appellant's former brother-in-law, was apprehended in the backyard. The search of the apartment disclosed 30.8 grams of heroin, some of it secreted beneath the kitchen sink and some hidden beneath the mattress on which code-

fendant David Mateo was found. The police discovered heroin packaging paraphernalia in a plastic bag on the bedroom floor, and in a nearby closet. After she was advised of her rights, appellant told the police that her mother and former brother-in-law knew nothing about the drugs. Only appellant and Mateo were arrested and charged.

The district court rejected codefendant Mateo's plea agreement, which called for the government to recommend that the charges against appellant Lopez be dismissed. Mateo nevertheless decided to plead guilty to one count of possessing heroin, with intent to distribute, and one count of conspiring to possess heroin, with intent to distribute. The court accepted Mateo's plea to the substantive charge but rejected his plea to the conspiracy charge, which was later dismissed at the request of the government.

At trial, appellant admitted that she was the lessee of the apartment and that Mateo had been living there since October 1981. She admitted that she and Mateo shared the bedroom in which was located the mattress under which some of the heroin had been discovered, the same bedroom in which heroin packaging paraphernalia had been found. Appellant denied any knowledge that there was heroin in the apartment. Appellant was convicted of conspiracy to possess heroin, with intent to distribute, in violation of 21 U.S.C. § 846, but the jury acquitted her on the substantive charge. She was sentenced to serve a fifteen-month prison term.

## I

## DISCUSSION

### A. *Mateo's Plea Agreement*

█ Under its plea agreement with David Mateo, the government agreed to "recommend to the Court that the indictment against codefendant Christian Lopez be dismissed." The district court refused to approve the plea agreement out of concern that Mateo might have felt "undue pressure" to plead guilty in response to the government's offer to dismiss all charges against Lopez. Thereafter, Mateo entered an unconditional guilty plea, which the court accepted. The prosecutor stated in open court that since "the Court has rejected the plea agreement between the parties, ... the government doesn't feel bound by any of the conditions ... in the plea agreement." Lopez and her attorney were present at Mateo's change of plea hearing. Undaunted, Lopez contends on appeal that the charges against her should have been dismissed in any event since Mateo's plea agreement, though never approved, was "satisfied," as far as the government was concerned, by Mateo's guilty plea. We find no merit in her contention.

█ We note at the outset that the district court acted well within its discretion in rejecting the agreement. *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (acceptance of plea agreement left to discretion of court); *United States v. Papaleo,* 853 F.2d 16 at 19 (1st Cir.1988) (same). Every plea agreement is subject to court approval pursuant to Fed.R.Civ.P. 11(e). *See United States v. Perez–Franco,* 873 F.2d 455, 460 (1st Cir.1989).[1] A plea agreement entailing lenity to a third party "imposes a special responsibility on the district court to ascertain [the] plea's voluntariness," *United States v. Buckley,* 847 F.2d 991, 1000 n. 6 (1st Cir.1988), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *see also United States v. Daniels,* 821 F.2d 76, 80 (1st Cir.1987), due to its coercive potential. Sensitive to the potential pressure on Mateo in these circumstances, the district court did not err in refusing to approve the agreement.

█ Plea agreements generally are governed by contract principles. *See, e.g., United States v. Anderson,* 921 F.2d 335, 337 (1st Cir.1990); *United States v. Papa-*

---

1. In addition, the government did as agreed, by recommending dismissal of the charges against Lopez, but the court withheld its approval. A dismissal recommendation is addressed to the discretion of the district court, as provided in Fed.R.Crim.P. 48(a). *See Perez–Franco,* 873 F.2d at 460.

*leo*, 853 F.2d 16, 18 (1st Cir.1988). However, even if third party beneficiary principles were applicable to a plea agreement in a criminal case, and we are unaware of authority to that effect, a nonparty, at least absent a showing of detrimental reliance, could assert no right to performance under an agreement which was never enforceable between the contracting parties due to the failure of a condition precedent; here, the approval of the district court.

■ The district court was careful to make absolutely certain that Mateo's entry of a guilty plea was in no manner contingent upon any provision in the unapproved plea agreement. Nor does Lopez suggest that the rejection of Mateo's plea agreement placed her in any worse position than before the agreement was negotiated. Absent a showing that the government gained unfair advantage as a result of the agreement, *cf. Papaleo*, 853 F.2d at 18 ("Due process concerns may ... arise prior to the entry of a guilty plea when the *defendant* detrimentally relies upon the government's promise") (emphasis added), once a plea agreement has been rejected by the court the government is under no obligation to abide by its terms. *See United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981) (as a general rule, either party to plea agreement may withdraw its consent until plea bargain has been accepted by court).

### B. *Recusal*

■ Appellant contends that the district judge should have recused himself because "his impartiality might reasonably be questioned." *See* 28 U.S.C. § 455(a). According to appellant, during the rule 11 hearing at which Mateo's plea was rejected, *see* Fed.R.Crim.P. 11, the judge improperly commented on appellant's case by comparing it to an unrelated case in which another woman had pled guilty to a drug offense. Appellant argues that the comparison made by the judge indicated prejudice against her, which later affected the tenor of the trial.

■ The standard for determining whether recusal is appropriate under 28 U.S.C. § 455(a) is an objective one; the judge must determine "whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the [movant], but rather in the mind of the reasonable man." *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir.1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). The movant may not rely on mere allegations but must "suppl[y] a factual basis for an inference of lack of impartiality." *United States v. Giorgi*, 840 F.2d 1022, 1036 (1st Cir.1988). A decision not to recuse is reviewed only for abuse of discretion. *Id.* at 1034; *Panzardi–Alvarez v. United States*, 879 F.2d 975, 984 (1st Cir.1989).

The record reflects that the judge's only purpose in referring to the case in which another woman pled guilty to a drug violation was to help explain the judge's refusal to permit dismissal of the charges against appellant, given the evidence adverted to in the government's proffer. The judge intimated no opinion as to appellant's guilt or innocence, or on the merits of any defense available to her. Appellant likewise points to no conduct or statement on the part of the presiding judge at trial which conceivably could afford an objective basis for forming a reasonable doubt concerning the judge's impartiality. Thus, she has not presented a minimal "factual basis for an inference of lack of impartiality." *Giorgi*, 840 F.2d at 1036.

### C. *Evidentiary Issues*

■ At trial, appellant sought to cross-examine one of the police officers about the police officer's testimony in another, unrelated federal court trial at which a different presiding judge had granted a motion for new trial, in part because the judge had disbelieved the officer's testimony. Appellant sought to proceed under Evidence Rule 608(b), which permits cross-examination, in the discretion of the court, into specific instances of the conduct of a witness "if probative of truthfulness or un-

truthfulness." Fed.R.Evid. 608(b). The district court ultimately precluded the proposed cross-examination, however, on the ground that its probative value would be outweighed by its potential for unfair prejudice. *See* Fed.R.Evid. 403.

Our review is severely hampered by the absence of an offer of proof as to the nature of the intended inquiry. *See* Fed. R.Evid. 103(a)(2) ("In case the ruling is one excluding evidence, [error may not be predicated on the ruling unless] the substance of the evidence was made known to the court by offer or was apparent from the context...."). *See also United States v. Smith,* 940 F.2d 710, 712–13 (1st Cir.1991) (applying Fed.R.Evid. 103(a)(2)). Like its counterpart, Evidence Rule 103(a)(1), rule 103(a)(2) is designed " 'to alert the trial court and the other party to the grounds of [any] objection so that it may be addressed or cured.' " *United States v. Castiello,* 915 F.2d 1, 4 (1st Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991) (quoting *United States v. Walters,* 904 F.2d 765, 769 (1990)).

Moreover, the record is far from clear as concerns what would have been asked of the officer on cross-examination. On the one hand, the district court expressed the view that it would be permissible to ask the officer whether he had testified untruthfully at the earlier trial, but that if the officer responded in the negative no extrinsic evidence could be introduced to demonstrate otherwise, particularly not the credibility opinion of the judge who presided at the earlier trial. On the other hand, the district court precluded this "permissible" cross-examination of the officer as well, apparently on the assumption that the officer would not admit that he had given untruthful testimony at the earlier trial.[2] There is no indication that appellant requested an opportunity to voir dire the officer out of the presence of the jury to ascertain his response.

Our review of the record indicates that the district court thus concluded that there was little utility in permitting the officer to be asked whether he had given untruthful testimony at the other trial, since no extrinsic evidence could be introduced to rebut his anticipated denial. *See* Fed.R.Evid. 403 & 608(b). Moreover, while potentially probative of the trustworthiness of the officer's testimony, the credibility assessment made by the presiding judge at an unrelated trial would have entailed a grave risk that the jury might abnegate its exclusive responsibility to determine the credibility of the testimony given by the officer at appellant's trial. *See, e.g., United States v. Molinares Charris,* 822 F.2d 1213, 1220 (1st Cir.1987) (it is the "jury's responsibility to assess the credibility of the witnesses").

The district court is vested with "considerable discretion" regarding evidentiary rulings under Evidence Rule 403. *See United States v. Santagata,* 924 F.2d 391 (1st Cir.1991). "Only rarely—and in extraordinarily compelling circumstances— will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Pinkham v. Burgess,* 933 F.2d 1066, 1071 (1st Cir.1991) (quoting *Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1340 (1st Cir.1988)). We are especially hesitant to find error where, as here, the party failed to make a sufficient offer of proof at trial to enable us to assess the merits of her claim on appeal. *See Earle v. Benoit,* 850 F.2d 836, 847–848 (1st Cir.1988) (court unable to review claim because of incomplete record where appellant failed to make an offer of proof pursuant to Fed.R.Evid. 103(a)(2)). Under the circumstances, no constitutional violation having been alleged, we discern no abuse of discretion in the decision to delimit cross-examination in the manner indicated. *See United States v. Boylan,* 898 F.2d 230, 254 (1st Cir.1990) (absent a constitutional violation, "appellate courts will grant relief from the shack-

---

**2.** The guilty verdict the government obtained in the earlier trial at which the officer testified may have lent some credence to the notion that the officer would have denied giving false testimony at the earlier trial.

ling of cross-examination only for manifest abuse of discretion").[3]

### D. *Motion for Acquittal*

Appellant asserts that the court wrongly rejected her motion for judgment of acquittal at the close of all the evidence.[4] She challenges the conspiracy conviction on the grounds (i) that the evidence was insufficient to prove anything more than her "mere presence" in the apartment and (ii) that the government dismissed the conspiracy charge against her only alleged coconspirator, Mateo, leaving no one with whom she could have conspired.

### (i) Sufficiency of Evidence

A denial of a motion for judgment of acquittal based on the insufficiency of the evidence is subject to deferential review.

> We assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. We do not weigh witness credibility, but resolve all credibility issues in favor of the verdict. The evidence may be entirely circumstantial and need not exclude every reasonable hypothesis of innocence; that is, the factfinder may decide among reasonable interpretations of the evidence.

*United States v. Batista–Polanco,* 927 F.2d 14, 17 (1st Cir.1991) (citations omitted).

In order to win a conspiracy conviction the government was required to establish, by direct or circumstantial evidence and beyond a reasonable doubt, that the defendant and one or more coconspirators

intended to agree and ... to commit the substantive criminal offense which was the object of their unlawful agreement. Due to the clandestine nature of criminal conspiracies, the law recognizes that the illegal agreement may be either 'express or tacit' and that a 'common purpose and plan may be inferred from a development and collocation of circumstances.' The government need not establish that the [coconspirators] knew or agreed upon every detail of the conspiracy. 'All that is required is to show the essential nature of the plan and their connections with it.' "

*United States v. Sanchez,* 917 F.2d 607, 610 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991) (quoting *United States v. Rivera–Santiago,* 872 F.2d 1073, 1079 (1st Cir.1989)).

There was enough evidence from which to draw a reasonable inference that appellant and her long-term roommate, Mateo, conspired to possess heroin, with intent to distribute. Appellant was the lessee of an apartment in which heroin packaging paraphernalia was discovered in two different locations. Heroin was found in two different locations in the apartment as well; some of it concealed in the kitchen area commonly shared by appellant and the other occupants, and some of it under the mattress in the bedroom appellant admittedly shared with Mateo. Thus, constructive possession of the controlled substance and the packaging paraphernalia was inferable from the uncontroverted evidence of appellant's "dominion and control over the area[s] where the contraband was found." *United States v. Barnes,* 890 F.2d 545, 549 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990) (upholding finding of constructive possession where defendant leased apartment in which

---

**3.** Appellant asserts that the court wrongly precluded any interrogation of codefendant Mateo concerning the rejected plea agreement. As the rejected plea agreement was devoid of probative value, however, there was no error. *See* Fed. R.Evid. 401.

**4.** Appellant likewise contests the denial of her motion for judgment of acquittal at the close of the government's case in chief. "Where the

defendant makes a motion for acquittal at the close of the government's case and then again at the close of the defendant's case, this court deems the mid-trial motion as waived by the defendant." *United States v. Barnes,* 890 F.2d 545, 549 n. 4 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990); *see also United States v. Notarantonio,* 758 F.2d 777, 788 (1st Cir.1985).

drugs and drug paraphernalia were found in common areas). Moreover, shortly after appellant had been advised of her right to remain silent, she volunteered to the police that her mother and brother-in-law knew nothing about the "drugs" the police had just found in her apartment, but made no disclaimer of knowledge on her own part. Appellant's voluntary statement exculpating her mother and brother-in-law reasonably could be construed as tending to inculpate appellant and Mateo, the only other adults who resided in the apartment. Furthermore, the jury was entitled to assess, but not required to accept, Mateo's recantation of his pretrial statement that Lopez knew the heroin was in the apartment. Similarly, it was within the province of the jury to evaluate the credibility of·appellant's trial testimony, including her denial of any knowledge of the presence of heroin and packaging paraphernalia in her apartment. *See, e.g., Batista–Polanco,* 927 F.2d at 18; *United States v. Jimenez–Perez,* 869 F.2d 9, 11 (1st Cir.1989). Finally, the jury was entitled to treat appellant's attempt to flee down the back stairway, as the police were breaking down the front door, as evidence of consciousness of guilt. *United States v. Hernandez–Bermudez,* 857 F.2d 50, 52 (1st Cir.1988); *United States v. Grandmont,* 680 F.2d 867, 869 (1st Cir.1982).

The force of the evidence as a whole, including all reasonable inferences favorable to the verdict, *see Batista–Polanco,* 927 F.2d at 17, was sufficient to support a rational jury finding that appellant knew that the heroin, and related heroin packaging paraphernalia, were being kept at her apartment, and thus that she and Mateo agreed, tacitly or otherwise, and intended to facilitate its possession for purposes of distribution, *see United States v. Penagar-*

*icano–Soler,* 911 F.2d 833, 841 (1st Cir. 1990).

### (ii) Effect of Mateo Dismissal

■ There is no merit to the contention that voluntary dismissal of the conspiracy charge against Mateo undermined appellant's conspiracy conviction. First, as a simple matter of logic, the government's voluntary dismissal of a conspiracy charge against a defendant's only alleged coconspirator does not preclude proof beyond a reasonable doubt, at defendant's trial, that the defendant conspired with that same alleged coconspirator. It remained within the province of the Lopez jury to determine, from the evidence presented at trial, whether in fact Lopez and Mateo agreed and intended to facilitate the possession of heroin found in their bedroom, and elsewhere, for purposes of distribution.[5] *See United States v. Pratt,* 913 F.2d 982, 992 (1st Cir.1990) (affirming conspiracy conviction after jury failed to reach unanimous verdict on codefendant, where two other possible coconspirators were never indicted); *United States v. Coronado,* 554 F.2d 166, 171 n. 7 (5th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *United States v. Sachs,* 801 F.2d 839, 845 (6th Cir.1986); *United States v. Sangmeister,* 685 F.2d 1124, 1127 (9th Cir. 1982). *Cf. United States v. Bucuvalas,* 909 F.2d 593 (1st Cir.1990) (rejecting "rule of consistency" whereby acquittal of alleged coconspirator requires acquittal of only other alleged conspirator on same charge at same trial).

### E. *New Trial Motion*

Appellant assigns various errors in the district court's denial of her motion for new trial. We have already discussed most of these claims, while others are raised in so superficial a fashion as to warrant no treat-

5. The position urged by appellant assumes that lack of sufficient evidence was the only prosecutorial motive for dismissal of the conspiracy charge against Mateo. Mateo pled guilty to the substantive charge, and the district court rejected Mateo's plea to the conspiracy count. The dismissal may as well have been motivated by a recognition on the part of the government that, in all likelihood, in these circumstances, a con- spiracy conviction would not have had any effect on Mateo's sentence. *See* U.S.S.G. § 3D1.2(b)(1) (providing for grouping of a "count charging conspiracy ... and a count charging any substantive offense that was the sole object of the conspiracy or solicitation."). In fact, the trial judge informed the government that a conviction for conspiracy would not prompt any increase in Mateo's sentence.

ment. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990) (it is a "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). We address two contentions which merit mention.

■ First, appellant argues that her conspiracy conviction cannot stand because she was acquitted of the substantive crime which formed the predicate for the conspiracy charge. The substantive crime and the conspiracy to commit it are separate offenses. *Callanan v. United States,* 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961). Although it may seem inconsistent in this case to convict on the conspiracy charge, and acquit the same defendant on the substantive charge alleged to have been the object of the conspiracy, the Supreme Court has made it clear that verdict inconsistency in itself is not a sufficient basis for vacating a conviction. *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (refusing to vacate conviction for facilitating certain felonies under 21 U.S.C. § 843(b) where jury acquitted on felony charges allegedly facilitated); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (affirming conviction for maintaining nuisance by keeping intoxicating liquor, despite defendant's acquittal on charges of unlawful possession and sale of liquor).

Verdict inconsistency does not indicate that the government necessarily failed to prove an essential element of its case beyond a reasonable doubt. *Powell,* 469 U.S. at 68, 105 S.Ct. at 478. We cannot "necessarily assume[ ] that the acquittal ... was proper—the one the jury 'really meant.'" *Id.* "It is equally possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at

an inconsistent conclusion on the [other] offense." *Id.* at 65, 105 S.Ct. at 476. As long as the trial and appellate courts are convinced on independent review that there was sufficient evidence to sustain a rational verdict of guilt beyond a reasonable doubt, the defendant is properly protected against any risk of injustice resulting from "jury irrationality." *Id.* at 67, 105 S.Ct. at 478; *Bucuvalas,* 909 F.2d at 595. As appellant's conspiracy conviction is supported by sufficient evidence, it must stand.

■ Second, appellant claims that Mateo's pretrial statement that Lopez knew there was heroin in her apartment should have been excluded at trial as inadmissible hearsay. The challenged statement was made under oath at Mateo's rule 11 hearing. As Mateo's statement met the requirements of Evidence Rule 801(d)(1)(A),[6] there was no error in its admission as proof of the matter asserted. *See United States v. Coran,* 589 F.2d 70, 76 (1st Cir.1978); *United States v. Dietrich,* 854 F.2d 1056, 1061 (7th Cir.1988); *United States v. Bigham,* 812 F.2d 943, 946 (5th Cir.1987).

## F. *Sentencing*

Finally, appellant asserts that the district court erroneously refused to consider her "reduced culpability" a proper basis for a downward departure under the Sentencing Guidelines.

■ As we often have held, "absent extraordinary circumstances[ ] we will not review a district court's decision not to depart from a Guideline sentence." *United States v. Porter,* 924 F.2d 395, 399 (1st Cir.1991); *United States v. Pomerleau,* 923 F.2d 5, 6 (1st Cir.1991); *United States v. Ocasio,* 914 F.2d 330, 333 (1st Cir.1990). The district court accorded appellant a four-level reduction as a "minimal participant," pursuant to U.S.S.G. § 3B1.2(a). The court recognized, however, that only "extraordinary, exceptional circumstances

---

**6.** Federal Rule of Evidence 801(d)(1)(A) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding...." Fed. R.Evid. 801(d)(1)(A).

... permit a judge to go above or below [the guideline range]." *See* U.S.S.G. § 5K2.0 ("the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance ... to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' "). The court went on to make an express finding that "[t]his kind of case is not one that would justify departure...." As the court was well aware of its power to depart in extraordinary circumstances but decided that a downward departure was unwarranted in this case, we are without jurisdiction to review the departure decision. *See, e.g., Sanchez*, 917 F.2d at 613 (discretionary decision not to depart from guidelines unappealable).

*Affirmed.*