968 F.2d 1210
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Victor Eugenio Cerdan REYES, Defendant, Appellant.
 No. 90-1750.
 United States Court of Appeals,
First Circuit.
 July 27, 1992
 
 Appeal from the United States District Court for the District of Massachusetts
 Victor Eugenio Cerdan Reyes on brief pro se.
 Wayne A. Budd, United States Attorney, and Brien T. O'Connor, Assistant United States Attorney on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Selya, Circuit Judge, Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Defendant challenges the sufficiency of the evidence supporting his conviction for attempt to possess more than 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846. As there was sufficient evidence of defendant's guilt, we affirm the judgment below.
 
 I. Background
 
 2
 On October 14, 1988, a Peruvian vessel named SOLIMAR docked at Belcher Oil Terminal in South Boston. A search of the vessel by customs agents revealed nine sausage shaped packages containing a total of 4,538 grams of cocaine in the room of crew member Faustino Purizaga-Marin.
 
 
 3
 Three days later, acting in cooperation with agents of the Drug Enforcement Administration, Purizaga telephoned defendant Cerdan-Reyes at a New Jersey number. Purizaga identified himself as "Fausto" and said he was anxious to get rid of "the stuff". Defendant, who excitedly indicated he'd been waiting for the call, did not ask for clarification. The two men agreed to meet the same evening at the Belcher Terminal in Boston. In later telephonic communications, the meeting place was changed to the Ramada Inn.
 
 
 4
 Purizaga, accompanied by DEA agent Salazar, then went to the Ramada Inn's parking lot and hid a bag containing three of the cocaine packages in some bushes. Agent Salazar testified that as he and Purizaga entered the hotel door, they were greeted in an excited and friendly manner by defendant, who recognized Purizaga by sight. Defendant invited them into the hotel, but Purizaga demurred, saying he was in a hurry. Defendant then retrieved some items of his own from the hotel lobby, rejoined Purizaga and Salazar at the door and, without question, followed the other two to the bushes. On the way, Salazar, who had not been introduced to defendant, asked, "do you have my pay, the thousand dollars that was promised to me?" Cerdan-Reyes responded, "yes, don't worry ....it's there."
 
 
 5
 When they reached the bushes, the testimony showed, Purizaga retrieved the bag containing the three cocaine packages, unzipped it, placed it in front of defendant, showed him the contents and said, "here it is." Defendant moved his hands toward the bag and responded, "okay." Defendant then turned toward the items he had brought with him, which had been laid aside. As he did so, he was arrested.
 
 
 6
 After his arrest, defendant was found to be carrying $13,000 in cash, an unused train ticket from Newark to Boston, a used plane ticket from Newark to Boston, and some miscellaneous items (including a quilt, a portable radio, and a suitcase containing a jacket and other clothing).
 
 
 7
 In response to Agent Salazar's questions after the arrest, defendant claimed that his purpose in travelling to Boston that day was to deliver the miscellaneous items, worth about $450, to Purizaga for transport back to Peru. Defendant said that $5,000 of the cash he'd been carrying was intended for a loan to Purizaga, whom he'd known since 1988. The remaining $8,000 was for the purchase of stereo equipment he wanted Purizaga to take back to Peru. Defendant said that after he'd purchased the unused train ticket found on his person, he'd realized that the train might arrive in Boston after Purizaga had left port, so he instead took a plane, and then took a taxi to the hotel. Defendant also said he was unemployed and had obtained the money from a safe deposit box in Newark.
 
 
 8
 The case was tried to the court. The prosecution's case was entirely circumstantial. Defendant did not put on any evidence, but moved for a judgment of acquittal at the close of the prosecution's evidence.
 
 II. Sufficiency of the Evidence
 
 9
 On a challenge to the sufficiency of the evidence, "we assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the [fact-finder's determination], with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. 1991). Where, as here, the evidence is circumstantial, it need not exclude every reasonable hypothesis of innocence, so long as a reasonable trier could find that it established guilt beyond a reasonable doubt. Id. at 927. See also United States v. Mateos-Sanchez, 864 F.2d 232, 238 (1st Cir. 1988) (evidence should be viewed as a whole including all legitimate inferences, in light most favorable to government).
 
 
 10
 We will not substitute our own interpretation for that of the trier of fact where several reasonable constructions are possible. It is the trier's job to weigh the evidence, make credibility judgments, and choose between varying interpretations of the evidence. Our review is confined to ascertaining the sufficiency of support for the trier's determination. United States v. Ortiz, No. 91-1974, slip op. (1st Cir. June 10, 1992).
 
 
 11
 The substantive offense of attempt to possess cocaine with intent to distribute requires proof beyond a reasonable doubt that defendant (1) intended to engage in the criminal conduct (knowing possession of cocaine with specific intent to distribute),[1] and (2) took a substantial step towards commission of the substantive offense which strongly corroborates the defendant's criminal intent. See United States v. Rivera-Sola, 713 F.2d 866 (1st Cir. 1983) (setting forth and defining elements needed to prove "attempt" under 21 U.S.C. § 846); Vargas, 945 F.2d at 426 (proof of elements of possession with intent to distribute under 21 U.S.C. § 841(a)(1)).
 
 
 12
 Defendant does not deny that he traveled from New Jersey to Boston to meet Purizaga. If undertaken for the criminal purpose charged, such a trip so obviously constitutes a "substantial step" in that direction as to require no discussion. We turn our attention, therefore, to the sufficiency of the evidence as probative of the other element of attempted possession, criminal intent.
 
 
 13
 There was no showing that defendant uttered any direct statement of purpose during his meeting with Purizaga and Salazar. His intention had to be inferred from the circumstances, by scrutiny of his behavior before, during and after the meeting. What defendant did and said, and of equal importance, what he didn't do or say when the innocent would have behaved differently, must reasonably support a finding of criminal intention.
 
 
 14
 Defendant reacted with words of distinct excitement to Purizaga's phone call. Although defendant expressed unfamiliarity with the proposed meeting place, he nevertheless immediately agreed to meet Purizaga, in four hours' time, at this uncertain location, in a city hundreds of miles away. Defendant did not ask Purizaga about the urgency of meeting, nor did he ask what "stuff" Purizaga was so anxious to unload. Defendant mentioned third persons without naming them during the conversation, in an apparent attempt, as the judge below found, to cloak the real subject of the call.
 
 
 15
 At the Ramada Inn meeting, defendant again expressed no surprise when, without preliminaries, Purizaga and Salazar led him toward the bushes. When Agent Salazar, to whom defendant had not even been introduced, demanded a $1,000 payment, defendant did not ask "why" but simply reassured Salazar that the money was "there." When the bag was produced from its hiding place, laid at defendant's feet, and opened to reveal three wrapped packages of cocaine, defendant did not express surprise, ask "what's this?", nor even ask "why have you hidden a bag in the bushes?"[2] Instead, defendant accepted Purizaga's "here it is," with an equally perfunctory, "okay."
 
 
 16
 It is true that inferences other than a guilty state of mind are possible, but they are harder to come by. Defendant's behavior and words were not what one would expect from a person who found himself unwittingly involved in an illegal scheme. And defendant's own explanation was not supportable in light of common sense and experience. It simply belies belief that defendant, who said he was then unemployed, travelled hundreds of miles on a few minutes notice, paying for a train and an airplane ticket, as well as a taxi ride, all in order to deliver $450 worth of goods for transport to Peru. Likewise, defendant's explanation for the $13,000 in cash found on his person is less than compelling. In the circumstances, it was a more reasonable conclusion that the money was intended for the purchase of the drugs.
 
 
 17
 "Because of the fact specific nature of any attempt determination, it is unwise to rely too heavily on other cases ... ". Rivera-Sola, 713 F.2d at 871. We note, however, that in other cases involving a defendant's seemingly passive presence at a prearranged drug deal, if there are circumstances that imply something more than "mere association" or "mere presence," the factfinder is free to "draw reasonable inferences from the evidence based on shared perceptions and understandings of the habits, practices, and inclinations of human beings." Ortiz, slip. op. at 6 (aiding and abetting drug trafficking); Batista-Polanco, 927 F.2d at 18 (possession and conspiracy).
 
 
 18
 In addition to hearing the testimony of the federal agents, the judge below listened to an audio tape of defendant's telephone conversation and had the benefit of seeing the witnesses recreate defendant's gestures and tone. He was thus in a better position than this court to interpret the meaning of defendant's actions and words as indicative of defendant's state of mind. See United States v. Lopez, 944 F.2d 33, 39-40 (1st Cir. 1991). While other interpretations may be possible, there was sufficient evidence to support the trier's conclusion of guilt beyond a reasonable doubt.
 
 
 19
 We also find no merit to defendant's alternate assignments of error based upon the due process clause and the Bruton rule.
 
 
 20
 Accordingly, the judgment below is affirmed.
 
 
 
 [1]
 Analytically there are three elements involving defendant's mental state that must be proven: (1) intent to engage in the substantive offense of (2) "knowing" possession of cocaine, with (3) the specific intent to distribute the drugs sought. Defendant has not argued the sufficiency of the proof to show the third mental state, perhaps because the quantity of the drugs, more than 500 grams, is alone sufficient to prove circumstantially that the drugs were intended for distribution, Batista-Polcano, 927 F.2d at 18-19; United States v. Vargas, 945 F.2d 426, 428-29 (1st Cir. 1991). We treat the argument before us, which focuses on the sufficiency of the evidence to prove intention, as involving only the first and second of these mental elements
 
 
 [2]
 The cocaine was not visible through the wrappings. Defendant's looking into the bag does not, therefore, inevitably lead to the conclusion that defendant knew the contents of the packages. In combination with the other evidence, however, defendant's knowledge was a reasonable inference. Further, on an unrelated credibility point, defendant himself produced evidence of his prior conviction for marijuana possession. Arguably this also supported an inference that defendant knew the usual way in which illegal drugs are wrapped