February 9, 1993

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 92-1901

 UNITED STATES OF AMERICA,
 Appellee,

 v.

 JORGE L. RODRIGUEZ ALVARADO
 Defendant, Appellant.

 

 ERRATA SHEET

 The opinion of this Court issued on February 4, 1993, is
amended as follows:

 Cover sheet: "District Judge" should be added after "and
 
Keeton,*".

February 4, 1993
 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-1901

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 JORGE L. RODRIGUEZ ALVARADO,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Hector M. Laffitte, U.S. District Judge]
 

 

 Before

 Torruella and Cyr, Circuit Judges,
 

 and Keeton,*District Judge
 

 

 Juanita Trevino for appellant.
 
 Jeanette Mercado R os, Assistant United States Attorney, with
 
whom Daniel F. Lopez, United States Attorney, was on brief for appel-
 
lee.

 

 

 

*Of the District of Massachusetts, sitting by designation.

 CYR, Circuit Judge. Jorge Rodriguez Alvarado appeals
 CYR, Circuit Judge.
 

the judgment of conviction and sentence entered against him on

four felony charges arising out of a scheme to counterfeit and

distribute one hundred dollar bills, in violation of 18 U.S.C.

 371, 471-474 and 2.1 We affirm.

 I

 BACKGROUND
 

 On January 20, 1992, Secret Service agents executed a

search warrant at a VCR repair shop in Ponce, Puerto Rico. The

warrant was based on information provided by Carlos Gutierrez

Borrero. Following his own arrest for distributing counterfeit

one hundred dollar bills, Gutierrez had identified the owner of

the VCR repair shop, Luis Oliveras Quintana, as the source of the

counterfeit obligations. Counterfeit bills in one hundred dollar

denominations totaling $392,000 were seized at the shop. After

Oliveras was arrested, he agreed to cooperate with the govern-

 

 1Appellant was charged with conspiracy to violate 18 U.S.C.
 471 and with aiding and abetting violations of 472, 473 and
474. Section 471 criminalizes the false making, forging, coun-
terfeiting, or altering of any obligation or other security of
the United States, with intent to defraud; 472: the passing,
uttering, publishing, or selling, with intent to defraud, of any
falsely made, forged, counterfeited, or altered obligation or
other security of the United States; 473: the buying, selling,
exchanging, transferring, receiving, or delivering, of any false,
forged, counterfeited, or altered obligation or other security of
the United States, with the intent that the same be passed,
published, or used as true and genuine; 474: printing, photo-
graphing, or in any other manner making or executing, any engrav-
ing, photograph, print, or impression in the likeness of any such
obligation or other security. Section 371 criminalizes con-
spiracies to defraud the United States; 2: the aiding and
abetting of an offense against the United States.

ment. Oliveras advised the agents that appellant was expected to

visit the shop on January 21 to collect the cash proceeds from

the sale of the counterfeit and to pick up the remainder of the

undistributed counterfeit bills.

 On January 21, under Secret Service surveillance,

appellant arrived at the shop and Oliveras handed him a briefcase

containing the undistributed counterfeit bills. A Secret Service

agent overheard appellant inquiring about "series 11."2 Appel-

lant removed three bills from the briefcase, put something in his

pocket, then left the shop and placed the briefcase in his

vehicle, whereupon he was arrested. Following his arrest,

undistributed counterfeit bills were found in the briefcase,

three more were removed from his pocket, and a notation bearing

the name "Carlos Gutierrez Borrero" was found in his wallet.

 Oliveras continued to cooperate by providing a state-

ment minimizing his own responsibility for the counterfeiting

scheme. After failing a polygraph examination, he admitted to a

larger role in the counterfeiting scheme. Both statements made

by Oliveras were disclosed prior to trial, but appellant was not

informed of the polygraph testing or the test results.

 As a consequence of Oliveras' cooperation, the printing

equipment and paraphernalia were seized and appellant and his

 

 2The trial testimony explained that "series 11" referred to
counterfeit bills which were the best quality imitations, bearing
serial numbers ending in "11".

 4

four codefendantswere indicted. The otherdefendants pled guilty.

 At appellant's trial, the government presented testimo-

ny that appellant had approached Oliveras with a plan to make and

distribute counterfeit one hundred dollar bills and that appel-

lant had indicated to Oliveras that he knew people who were

interested in purchasing the counterfeit. The evidence indicated

that appellant and one Freddie Velez provided the paper for

printing the counterfeit bills and, though not present at the

actual printing, that appellant expected to share in the profits

from the counterfeiting operation. After a three-day jury trial,

appellant was convicted on all four counts. He was sentenced to

concurrent forty-five month terms on each count.

 II

 DISCUSSION
 

Sufficiency of the Evidence
 

 Appellant seems to assert that the jury verdicts on the

three substantive counts cannot stand, as there was no evidence

that he was present at the time the counterfeit bills were

printed; and that the conspiracy conviction cannot stand, as it

was based on "mere presence" at the crime scene on January 21.

 Under the "offense clause" of section 371, a sustain-

able conviction requires proof beyond a reasonable doubt that the

defendant conspired to commit the substantive offense which was

the object of the unlawful agreement. United States v. Lopez,
 

944 F.2d 33, 39 (1st Cir. 1991); United States v. Sanchez, 917
 

 5

F.2d 607, 610 (1st Cir. 1990), cert. denied, 111 S. Ct. 1625
 

(1991). A conviction for aiding and abetting a substantive

offense requires proof beyond a reasonable doubt that the defen-

dant associated himself with the commission of the substantive

offense, participated in it as something he wished to bring

about, and sought by his actions to make it succeed. United
 

States v. Ortiz, 966 F.2d 707, 711 n.1 (1st Cir. 1992), cert.
 

denied, 61 U.S.L.W. 3479 (U.S. 1993); United States v. Lema, 909
 

F.2d 561, 569 (1st Cir. 1990). Evidence of "mere presence" can

sustain neither a conviction for conspiracy, United States v.
 

Tejeda, 974 F.2d 210, 213 (1st Cir. 1992); United States v.
 

Ocampo, 964 F.2d 80, 82 (1st Cir. 1992), nor for aiding and
 

abetting, United States v. Clotida, 892 F.2d 1098, 1104-05 (1st
 

Cir. 1989); United States v. Francomano, 554 F.2d 483, 486 (1st
 

Cir. 1977).

 We assess the sufficiency of the evidence as a whole,

including all reasonable inferences, in the light most favorable

to the verdict, with a view to whether a rational trier of fact

could have found the defendant guilty beyond a reasonable doubt.

See, e.g., United States v. Figueroa, 976 F.2d 1446, 1459 (1st
 

Cir. 1992); United States v. Lopez, 944 F.2d 33, 39 (1st Cir.
 

1991). The evidence may be entirely circumstantial and need not

exclude every reasonable hypothesis of innocence; in other words,

the jury may accept any reasonable interpretation of the evi-

dence, United States v. Batista-Polanco, 927 F.2d 14, 17 (1st
 

Cir. 1991), and we must do the same.

 6

 The evidence was sufficient to establish beyond a

reasonable doubt that appellant knowingly conspired to make,

possess, and deliver counterfeit obligations, with intent to

defraud the United States, and that he aided and abetted the

possession, delivery and printing of counterfeit obligations.

The evidence revealed that the five co-conspirators, appellant

among them, caused approximately $800,000 in counterfeit obliga-

tions to be printed. Appellant not only suggested that Oliveras

print the counterfeit obligations but provided the paper, ar-

ranged a distribution network, aided and abetted the collection

of the illicit proceeds, and personally recovered the undistrib-

uted counterfeit bills.

 The contention that he could not be convicted of

conspiracy unless he was at the shop when the bills were printed

is as bogus as the bills printed in his absence. "[U]nder a

basic tenet of traditional conspiracy theory . . . a conspirator

is responsible for acts his or her co-conspirators executed

during the existence and in furtherance of the conspiracy."

United States v. Sabatino, 943 F.2d 94, 96 (1st Cir. 1991);
 

Figueroa, 976 F.2d at 1446. Similarly, appellant's convictions
 

for aiding and abetting the printing of the bogus bills were

amply supported by the evidence that he initiated the counter-

feiting scheme, recruited Oliveras, and provided the paper on

which the bills were printed.

 7

Evidentiary Rulings
 

 Appellant challenges two evidentiary rulings, which we

review for abuse of discretion. United States v. Arias-Santana,
 

964 F.2d 1262, 1264 (1st Cir. 1992); United States v. Abreu, 952
 

F.2d 1458, 1467 (1st Cir.), cert. denied, 112 S. Ct. 1695 (1992).
 

 First, appellant asserts that the district court erred

in admitting evidence seized from the shop, consisting of the

printing press, lamp, paper, and ink used in the counterfeiting

process. He frivolously contends that the seized evidence was

not relevant to the charges against him because he was not

present at the time the bills were printed. As a founding

member, however, appellant was criminally responsible for all

acts committed in furtherance of the conspiracy. See Figueroa,
 

976 F.2d at 1452 (evidence of recorded statements of coconspirat-

ors admissible against defendant).

 Second, appellant claims that the district court erred

in excluding, as hearsay, the allegedly exculpatory post-arrest

statements of codefendants Velez and Santiago, neither of whom

was called to testify at trial. He argues that the statements

were admissible as coconspirator statements pursuant to Fed. R.

Evid. 801(d)(2)(E). Appellant's argument misses the mark, as

Evidence Rule 801(d)(2)(E) applies to coconspirator statements

made "during the course and in furtherance of the conspiracy,"

Fed. R. Evid. 801(d)(2)(E); see also Ortiz, 966 F.2d at 714-15,
 

whereas these statements were made neither during nor in further-

ance of the conspiracy.

 8

Nondisclosure of Polygraph Testing and Results
 

 Appellant claims that the government failed to provide

adequate pretrial discovery by withholding the information that

Oliveras took and failed a polygraph test. According to appel-

lant, knowledge of the failed polygraph would have helped the

defense establish that Oliveras lied. We must reverse if the

totality of the circumstances indicates that the nondisclosure

"'might have affected the outcome of the trial.'" United States
 

v. Devin, 918 F.2d 280, 289 (1st Cir. 1990), citing United States
 

v. Agurs, 427 U.S. 97, 104 (1976); Sanchez, 917 F.2d at 618; see
 

also Barrett v. United States, 965 F.2d 1184, 1189 (1st Cir.
 

1992).

 Under all the circumstances, we are satisfied that

nondisclosure of the polygraph could not have affected the

outcome of the trial. During pretrial discovery, the defense was

provided with the two inconsistent statements made by Oliveras.

Appellant therefore was well aware that at least one statement

was false, at least in part, which plainly enabled the defense to

challenge Oliveras' credibility on that ground.3 Thus, evidence

of Oliveras' failure to pass the polygraph was cumulative to the

inconsistent statements previously introduced in evidence, see
 

Sanchez, 917 F.2d at 618 (nondisclosure of cumulative evidence
 

not material to conviction) (citing cases), especially in view of

 

 3Oliveras' initial statement falsely asserted that appellant
was almost totally responsible for the counterfeiting scheme.
The second statement conceded that Oliveras had a significant
role in the conspiracy.

 9

the vigorous impeachment to which Oliveras was subjected on

cross-examination, see United States v. Shelton, 588 F.2d 1242,
 

1248 (9th Cir. 1978), cert. denied, 442 U.S. 909 (1979) ("Im-
 

peachment evidence, even that which tends to further undermine

the credibility of the key Government witness whose credibility

has already been shaken due to extensive cross-examination, does

not create a reasonable doubt that did not otherwise exist when

that evidence is cumulative or collateral.") (citations omitted).

Finally, after the testimony of Oliveras, during government

counsel's direct examination of the agent who interrogated

Oliveras, the jury was made aware that Oliveras had failed the

polygraph test. The defense in turn inquired about the polygraph

on cross-examination of the government agent, but made no request

to recall Oliveras.

 We therefore conclude that the government's imprudent

decision to withhold pretrial disclosure of the polygraph testing

and results could not have altered these jury verdicts.

Variance
 

 Although appellant alleges that there was an "impermis-

sible variance between the offense as presented to the Grand Jury

. . . and the case presented in Court," he identifies no vari-

ance. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st
 

Cir.), cert. denied, 494 U.S. 1082 (1990) (arguments adverted to
 

with no attempt at developed argumentation are deemed waived).

Even if the variance claim were not deemed waived, however, we

would reject it, as the indictment clearly apprised appellant of

 10

the charges against him and the evidence presented at trial was

"relevant to and within the scope of the crimes" charged in the

indictment. United States v. Sutton, 970 F.2d 1001, 1007 n.8
 

(1st Cir. 1992) (no variance where indictment fully apprised

defendant of crimes with which he was charged). See United
 

States v. Medina, 761 F.2d 12, 16 (1st Cir. 1985) (same).
 

U.S.S.G. 3B1.1(b)
 

 Finally, appellant challenges the three-level enhance-

ment imposed pursuant to U.S.S.G. 3B1.1(b). The district court

found that appellant was a "manager or supervisor" of criminal

activity involving five or more participants. We review role-in-

offense rulings for clear error. United States v. Schultz, 970
 

F.2d 960, 963-64 (1st Cir. 1992), cert. denied, 61 U.S.L.W. 3479
 

(1993); United States v. Panet-Collazo, 960 F.2d 256, 261 (1st
 

Cir.), cert. denied, 113 S. Ct. 220 (1992).
 

 Section 3B1.1 of the Sentencing Guidelines prescribes

offense level enhancements based "upon the size of a criminal

organization (i.e., the number of participants in the offense)
 

and the degree to which the defendant was responsible for commit-

ting the offense." U.S.S.G. 3B1.1, comment. (backg'd).

Section 3B1.1(b) directs an increase in the offense level "[i]f

the defendant was a manager or supervisor (but not an organizer

or leader) and the criminal activity involved five or more par-

ticipants or was otherwise extensive." Although the terms

"manager" and "supervisor" are not defined in the Guidelines, the

application notes to section 3B1.1 list seven nonexclusive

 11

factors for use in distinguishing a "leadership and organization-

al role [for which section 3B1.1 provides a four-level increase

if the criminal activity involved five or more participants] from

one of mere management or supervision." Id. comment. (n.3).4
 

 The presentence report recommended a four-level in-

crease due to appellant's aggravated role as an organizer or

leader of a criminal activity involving five participants. In

response to defense objections at sentencing, the court declined

to adopt the recommendation in the presentence report. The court

nevertheless found that three of the seven factors to be used in

distinguishing a "leader or organizer" from a "manager or super-

visor" were satisfied in the present case: recruitment of

accomplices, a substantial role in planning and organizing the

offense, and the extensive nature and scope of the illegal

activity. The court found in particular that appellant had

"seduced" Oliveras into joining the conspiracy and that Oliveras

in turn had brought in others, including those who actually

printed the counterfeit; that appellant, under an assumed name,

purchased the paper on which the counterfeit obligations were

printed; and that the illegal activity was extensive as it

involved approximately $800,000 in counterfeit obligations.

 

 4The factors listed in 3B1.1, comment. n.1 are:

 the exercise of decision making authority, the nature
 of participation in the commission of the offense, the
 recruitment of accomplices, the claimed right to a
 larger share of the fruits of the crime, the degree of
 participation in planning or organizing the offense,
 the nature and scope of the illegal activity, and the
 degree of control and authority exercised over others.

 12

 There was no clear error in the enhancement of appel-

lant's sentence as a "manager or supervisor." The sentencing

court explicitly found that appellant played an important role in

planning and organizing the offense, which entailed an increased

degree of responsibility for the commission of the offense. As

this court has noted, the section 3B1.1 enhancement applies if

the defendant "exercised some degree of control over others

involved in the commission of the crime or he [was] responsible
 

for organizing others for the purpose of carrying out the crime."
 

United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990)
 

(emphasis added); see also United States v. Brown, 944 F.2d 1377,
 

1381 (7th Cir. 1991) (same). Finally, we find no clear error,

particularly in light of appellant's critical role in recruiting

a reluctant Oliveras, a well-known figure in criminal circles,

who was indispensable to the conspiracy in that he alone appears

to have been able to recruit others capable of printing the

counterfeit obligations. See United States v. Pierce, 907 F.2d
 

56, 57 (8th Cir. 1990) (recruitment finding "provides strong

support for the conclusion that [defendant] played a managerial

or supervisory role under 3B1.1(b)").

 Affirmed.
 

 13